PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KIMBERLY HOBBS, | ) |
| | ) CASE NO. 4:16CV2582 |
| Plaintiff, | ) |
| | ) |
| v. | ) JUDGE BENITA Y. PEARSON |
| | ) |
| MAHONING COUNTY GENERAL | ) |
| HEALTH DISTRICT, | ) |
| | ) **MEMORANDUM OF OPINION AND** |
| Defendant. | ) **ORDER** [Resolving ECF No. 16] |

Pending before the Court is Defendant's Motion for Summary Judgment. ECF No. 16. Plaintiff responded in opposition. ECF No. 17. Defendant replied. ECF No. 21. For the reasons that follow, Defendant's motion is granted.

**I. Background**

Plaintiff Kimberly Hobbs, a former Registered Sanitarian (licensed health inspector) for Defendant Mahoning County General Health District (the "Health District"), sued the Health District for disability discrimination under Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112, and Ohio Revised Code § 4112.02, and wrongful discharge in violation of Ohio public policy. ECF No. 1. At all relevant times, Plaintiff suffered from several medical conditions, including arthritis of the knees, anemia, and lymphedema. *Id.*

The Canfield Fair is an annual event that features myriad mobile food vendors. The Health District is required to conduct inspections of the mobile food units before the Fair begins.

(4:16CV2582)

ECF No. 16 at PageID#: 99. These inspections were performed by Sanitarians who worked under a union contract. Id. The contract in effect in 2012 required that all Sanitarians participate in the food inspections. Id. The Fair Board's policies allowed only two golf carts to be used, by the Health District, the Tuesday of the Fair through Friday morning. Id. at PageID#: 100. Use of the carts was specifically permitted by individuals assigned to license and inspect the plumbing at all facilities. Id.; ECF No. 16-3 at PageID#: 235. Plaintiff's job at the Fair did not fall under either category. Id. at PageID#: 100. Plaintiff was a Sanitarian responsible for conducting health inspections of restaurants and mobile units (*i.e.* food vendors). ECF No. 17 at PageID#: 276.

In 2012, the Fair was scheduled to take place August 28 through September 3. ECF No. 16 at PageID#: 99. In anticipation of the Fair, on July 16, 2012, Plaintiff sent the following email to her immediate supervisor, Mary Helen Smith, requesting that she be permitted to use a golf cart, while conducting inspections of mobile units at the Fair. ECF No. 16 at PageID#: 99.

> Good Morning Mary Helen,
>
> The fair is coming up and I was wondering if you would be able to give me the company name, phone number, email address and a contact person if possible for the company where we order the golf carts from. I would like to rent a cart for myself for the entire time I'll be at the fair.
> Also, do you remember how much a cart would cost from Tuesday - Friday?
> Please let me know at your earliest convenience so I can contact them.
>
> Thank you,
>
> Kim

*Id.*

On July 17, 2012, Smith, seeking upper management's assistance on Plaintiff's request, emailed the Health District's Commissioner, Patricia Sweeney. ECF No. 16-3 at PageID#:

(4:16CV2582)

235—36. Although Smith believed that "the staff ha[d] been enabling [Plaintiff's] obesity problem," she informed Sweeney that Plaintiff's request was likely a labor management issue because it required that the Health District write a formal letter to the Fair Board, requesting permission to use the golf carts. ECF No. 17-6 at PageID#: 322 (alterations added); *see also* ECF No. 16-3 at PageID#: 236. Although Plaintiff's email did not articulate her request for a golf cart, Sweeney informed Smith that what Plaintiff may be seeking was a reasonable accommodation under the ADA. ECF No. 17-6 at PageID#: 322.

While her request to use a golf cart at the Fair was pending, Plaintiff sent the Health District a medical slip from her doctor indicating she would not be able to attend the Fair due to health reasons. ECF Nos. 16 at PageID#: 100; 16-1 at PageID#: 132; 16-3 at PageID#: 243. Plaintiff's medical slip was dated July 20, 2012, four days after Plaintiff had requested to use a golf cart at the Fair. ECF No. 16 at PageID#: 100. Plaintiff then sent the Health District a second medical slip dated July 25, 2012 from another physician, again indicating she would not be medically fit to attend the Fair. *Id*. Upon receipt of Plaintiff's medical slips, the Health District acknowledged in an email that Plaintiff would not be required to attend the Fair, therefore, rendering Plaintiff's golf cart request moot. *Id*.

Thereafter, the Health District elected to attend field inspections with Plaintiff. *Id.* On August 2, 2012, Plaintiff's immediate supervisor, Smith, accompanied Plaintiff to her scheduled field inspections for the day—a restaurant inspection and a mobile unit inspection. *Id.* Smith concluded that Plaintiff inspected the restaurant without incident but could not complete the inspection of the mobile unit because of her physical limitations. *Id.* At the time Plaintiff was to

3

(4:16CV2582)

conduct the mobile unit inspection, she indicated to Smith that, because of her physical limitations, she was unable to enter the mobile unit and properly complete the inspection. *Id.*; ECF No. 16-3 at PageID#: 244. Plaintiff then informed Smith that she had not been able to properly complete mobile unit inspections for some time, and that her mobile units inspections, prior to August 2, 2012, had been performed below Health Department standards because of her physical limitations. ECF Nos. 16 at PageID#: 101; 16-1 at PageID#: 125—26. As a result, Smith verbally reprimanded Plaintiff, and subsequently, made a written record of her verbal instructions and cautioning to Plaintiff. ECF Nos. 16 at PageID#: 101; 16-3 at PageID#: 245—46.

After the observed inspections, the Health District held several meetings to determine how it could adjust Plaintiff's employment duties to accommodate her physical limitations and inability to properly inspect mobile units. ECF No. 16 at PageID#: 101. Based on Plaintiff's continued ability to conduct restaurant inspections, the Health District offered Plaintiff an accommodation of foregoing all mobile unit inspections and assuming more restaurant inspections. ECF Nos. 16 at PageID#: 101; 16-3 at PageID#: 247. In response to the Health District's offer, Plaintiff stated that "she could not physically handle any more restaurant inspections at that time." ECF No. 17 at PageID#: 284—85. On August 27, 2012, Plaintiff presented the Health District with her third physician's note stating that Plaintiff was unable to perform her duties as a Sanitarian because of her disability. ECF Nos. 16 at PageID#: 101; 16-1 at PageID#: 134. On August 28, 2012, Plaintiff voluntarily resigned from her sanitarian position. ECF Nos. 16 at PageID#: 101; 16-1 at PageID#: 186. Plaintiff later applied for Ohio Public

(4:16CV2582)

Employees Retirement Systems ("OPERS") Disability. ECF No. 16-1 at PageID#: 126—27. She was awarded benefits on or about December 2, 2012. *Id.*

After receiving her right-to-sue letter from the EEOC, Plaintiff brought suit against the Health District for violations of the ADA, Ohio Revised Code § 4112.02, and Ohio public policy.[1] ECF No. 1. Plaintiff alleges that the Health District wrongfully terminated her employment in violation of the ADA, Ohio Revised Code § 4112.02, and Ohio public policy by (1) discriminating against her based on her disability, and (2) failing to accommodate her disability, resulting in her constructive discharge. *Id.* The Health District moved for summary judgment. ECF No. 16. The matter is ripe for review. *See* ECF No. 17; ECF No. 21.

## II. Standard of Review

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party must "show that the non-moving party has

---

[1] Plaintiff initially sued the Health District in June of 2015. She voluntarily dismissed that action. *See* Case No.: 4:15CV1238, ECF Nos. 18 and 19. She filed the instant lawsuit in October of 2016.

5

(4:16CV2582)

failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial." *Guarino v. Brookfield Twp. Trustees.*, 980 F.2d 399, 403 (6th Cir. 1992).

Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute. An opposing party may not simply rely on its pleadings; rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). The non-moving party must, to defeat the motion, "show that there is doubt as to [whether] the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

The United States Supreme Court, in deciding *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), stated that in order for a motion for summary judgment to be granted, there must be no genuine issue of material fact. *Id.* at 248. The existence of some mere factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A fact is "material" only if its resolution will affect the outcome of the lawsuit. In determining whether a factual issue is "genuine," the court must decide whether the evidence is such that reasonable jurors could find that the non-moving party is entitled to a verdict. *Id.* Summary judgment "will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* To withstand

6

(4:16CV2582)

summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990). The existence of a mere scintilla of evidence in support of the non-moving party's position ordinarily will not be sufficient to defeat a motion for summary judgment. *Id.*

### III. Analysis

#### A. Disability Discrimination Claims under the ADA and Ohio Law

In Counts One and Two of her Complaint, Plaintiff alleges that the Health District violated the ADA and Ohio Revised Code § 4112.02 by discriminating against her based on her disability, and failing to engage in an interactive process to accommodate her disability, resulting in her constructive discharge. ECF No. 1. The Health District does not dispute that Plaintiff is disabled. ECF No. 16 at PageID#: 105. Rather, the Health District argues that Plaintiff's ADA claims fail as a matter of law because she cannot establish that (1) she was "otherwise qualified" for the position, with or without a reasonable accommodation; (2) she proposed a reasonable accommodation; or (3) that her receipt of OPERS disability benefits do not disqualify her from pleading ADA claims. *Id.* at PageID#: 107—08.

##### 1. ADA Framework

The same analysis is employed to evaluate claims made pursuant to the ADA and Ohio Revised Code § 4112.02. *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 201 (6th Cir. 2010) (citing *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 872 (6th Cir.2007) (citation omitted) (applying ADA's analysis to claims made pursuant to Ohio Revised Code § 4112.02)).

7

(4:16CV2582)

Therefore, the following discussion of the ADA also applies to Plaintiff's state law disability discrimination claim under Ohio Revised Code § 4112.02.

The ADA, as amended, makes it unlawful for an employer to "discriminate against a qualified individual on the basis of a disability." *Rorrer v. City of Stow*, 743 F.3d 1025, 1038 (6th Cir. 2014) (quoting 42 U.S.C. § 12112(a)). The ADA defines the term "discriminate" to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability" unless the employer "can demonstrate that the accommodation would impose an undue hardship." 42 U.S.C. § 12112(b)(5)(A).

### 2. Discrimination Claims

When a plaintiff lacks direct evidence of disability discrimination, she may proceed under the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973), burden-shifting framework of proof. *Ferrari v. Ford Motor Company*, 826 F.3d 885, 891 (6th Cir. 2016). To establish a *prima facie* case of disability discrimination under the ADA, Plaintiff must show that: (1) she is disabled; (2) she is otherwise qualified for the position, with or without reasonable accommodation; (3) she suffered an adverse employment decision; (4) the employer knew or had reason to know of plaintiff's disability; and (5) the position remained open while the employer sought other applicants or replaced. *Id.* at 891–92. If a *prima facie* case can be established, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its action. *Id.* at 892 (citation omitted). If the defendant meets this factor, the burden shifts back to the plaintiff to establish the proffered reason was a pretext for discrimination. *Id.* (citation omitted).

8

(4:16CV2582)

Under the ADA, the term "qualified individual" is defined as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Gamble v. JP Morgan Chase & Company*, 689 F. App'x 397, 402 (6th Cir. 2017) (quoting 42 U.S.C. § 12111(8)). "A job function is essential if its removal would fundamentally alter the position." 29 C.F.R. § 1630.2(n). The determination "should reflect the actual functioning and circumstances of the particular enterprise involved." *Hall v. United States Postal Serv.*, 857 F.2d 1073, 1079 (6th Cir. 1988). The ADA notes that "consideration shall be given to the employer's judgment as to what functions of a job are essential" and an employer's "written description" of the job. 42 U.S.C. § 12111(8). The regulations of the ADA also direct consideration to the consequence of not requiring the incumbent to perform the function. *Keith v. Cty. of Oakland*, 703 F.3d 918, 925–26 (6th Cir. 2013). Lastly, the time period relevant to a determination of whether a plaintiff is a "qualified individual" is the time of discharge. *Aston v. Tapco Int'l Corp.*, 631 F. App'x 292, 297 (6th Cir. 2015).

In the present case, the Health District identifies conducting inspections and investigations of various facilities (*e.g.* food service operations, food establishments, and vending locations), as an essential function of Plaintiff's job as a Sanitarian. ECF No. 21 at PageID#: 403. The need for Sanitarians to perform on-site inspections and investigations is critical to the Health District's compliance with state and local laws to ensure public health and food safety. *Id.* Furthermore, as the employer, the Health District's identification of this function as essential should be given some consideration. *Jakubowski*, 627 F.3d at 201—02. The record establishes

9

(4:16CV2582)

that Plaintiff's essential job duties necessarily require her to conduct on-site inspections and investigations of facilities–restaurants and mobile units. The Court finds that Plaintiff's inability to perform inspections, at the time of her resignation, disqualified her from the Sanitarian position.

The record makes clear that Plaintiff was unable to inspect mobile units without an accommodation. This is evidenced by Plaintiff's statement to Smith, on August 12, 2012, that she had not been able to properly inspect mobile units for some time because of her inability to enter mobile units. ECF No. 16-3 at PageID#: 244.

Plaintiff argues, however, that with an accommodation—that is, use of a golf cart at the Fair —she would have been able to conduct mobile unit inspections. ECF No. 17 at PageID#:284—85. When conducting an inspection of a mobile unit, a sanitarian is required to step into the unit and inspect the food storage and cooking units, that may include refrigerators, friers, grills, or sinks. ECF No. 16-3 at PageID#: 240. In light of this evidence, even with the accommodation of a golf cart, Plaintiff would not have been able to perform the basic functions of the job—inspecting mobile units—because of her inability to enter those units. *See Id.* at PageID#: 244.

Nevertheless, Plaintiff contends that at the time of her resignation she was "otherwise qualified" because she was able to conduct restaurant inspections. ECF No. 17 at PageID#: 286. This argument also fails because the record is replete with evidence showing that, at the time of her resignation, Plaintiff was unable to work. *See* ECF Nos. 16-1 at PageID#: 134—35 (Plaintiff's deposition testimony stating that it was her doctor's opinion—based on his

10

(4:16CV2582)

assessment and their discussions concerning her health—that she "just couldn't do the job at that point in time"); 16-3 at PageID#: 249 (Smith's deposition testimony that Plaintiff gave her a doctor's slip stating that she could no longer work); 16-1 at PageID#: 134 (Plaintiff's deposition testimony that given her physical condition in August of 2012, she was not physically capable of doing her job).

Actually working is an essential function of any job, and based on the evidence, Plaintiff's deteriorating health prevented her from attending work to perform the basic functions of her job. *See Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 392–93 (6th Cir. 2017) (holding that an employee could not perform the essential function of regularly attending her job when she was absent for "entire months in 2013 and 2014"); *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 761 (6th Cir. 2015) (en banc) ("That general rule—that regularly attending work on-site is essential to most jobs, especially the interactive ones—aligns with the text of the ADA.").

Furthermore, in considering the Health District's suggestion that Plaintiff forgo mobile unit inspections and focus solely on restaurant inspections, Plaintiff admitted that she "did not believe she could physically handle [inspecting] more restaurants at that time." ECF No. 17 at PageID#: 287 (alteration added). Although Plaintiff contends that she was constructively discharged, the evidence makes clear that Plaintiff, upon her physician's determination that her physical limitations prevented her from working, chose to voluntarily resign from her position. ECF No. 16-1 at PageID#: 134—35.

(4:16CV2582)

Therefore, because Plaintiff does not satisfy her *prima facie* burden of showing that she was otherwise qualified for the sanitarian position, with or without a reasonable accommodation, her disability discrimination claims, under the ADA and Ohio Revised Code § 4112.02, fail.

### 3. Failure to Accommodate Claim

Next, Plaintiff argues that the Health District violated the ADA when it failed to accommodate her disability. ECF Nos. 1; 17 at PageID#: 284. The Sixth Circuit also prescribes the *McDonell-Douglas* burden shifting framework for "discrimination claim[s based] upon an employer's failure to accommodate [a] disability." *Kleiber*, 485 F.3d at 868. Under a *prima facie* case for failure to accommodate, Plaintiff bears the burden of establishing that "(1) [she] was disabled, (2) [she] was 'otherwise qualified' with or without a reasonable accommodation, (3) [her] employer knew or had reason to know of [her] disability, (4) [she] requested an accommodation, and (5) [her] employer failed to provide the necessary accommodation." *Arndt v. Ford Motor Co.*, 2017 WL 6375584, *6 (6th Cir. Dec. 13, 2017) (alterations added). Once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to demonstrate the plaintiff's proposed accommodation would pose an undue hardship. *Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974, 983 (6th Cir. 2011).

Because Plaintiff has failed to meet her burden in establishing that she was "otherwise qualified" for the position of a sanitarian, her failure to accommodate claim necessarily fails as well. *See Kleiber*, 485 F.3d at 869. In the alternative, the Court finds that Plaintiff's failure to accommodate claim is defeated because Plaintiff did not propose a reasonable accommodation, and has failed to show that the Health District engaged in the interactive process in bad faith.

12

(4:16CV2582)

In response to whether Plaintiff proposed a reasonable accommodation, the Health District correctly avers that the accommodation sought by Plaintiff was isolated to the Fair, and was limited to a request for the use of a golf cart.[2] ECF No. 16 at PageID#: 107. The Sixth Circuit has held that a disabled employee who requires an accommodation "is saddled with the burden of proposing an accommodation and proving that it is reasonable." *Jakubowski*, 627 F.3d at 202. While "an employee need not use the magic words 'accommodation' or even 'disability,' the request does need to make it clear from the context that it is being made in order to conform with existing medical restrictions." *Leeds v. Porter*, 249 F. App'x 442, 450 (6th Cir. 2007) (citing *Smith v. Henderson*, 376 F.3d 529, 535 (6th Cir. 2007)). Magic words aside, Plaintiff August 16, 2012 email to Smith did not properly request an accommodation because she did not link her request to use a golf cart at the Fair to her disability. *See* ECF No. 16 at PageID#: 107. Plaintiff's email merely inquired about the vendor's contact and pricing information regarding the rental of golf carts, and at no point alluded to her disability being the reason for her ask. *Id.* at PageID#: 99.

Even assuming Plaintiff met her initial burden of requesting an accommodation from the Health District, her proposed accommodation to use a golf cart at the Fair was unreasonable

---

[2] In her opposition, Plaintiff alludes to requests for accommodation that include working in the office, part-time scheduling, or disability leave. *See* ECF No. 17 at PageID#: 285. Plaintiff, however, does not provide evidence showing that she made such accommodation requests that include, part-time scheduling, restaurant work, or inquiries regarding medical leave, at the time of her resignation. *See* ECF No. 16 at PageID#: 110. Neither does Plaintiff provide evidentiary support of how these accommodations, such as working in the office, would allow her to perform an essential function of her job—inspecting food units. Other than requesting the use of a golf cart for several days during the Fair, Plaintiff requested no other accommodation.

(4:16CV2582)

because it would eliminate an essential function of her job—properly conducting inspections of facilities. While, the golf cart may have aided Plaintiff's movement between mobile units, it would not have allowed her to enter the units and properly inspect them. *See Ford Motor Co.*, 782 F.3d at 761 (citing 42 U.S.C. § 12111(9)(B)) (explaining that a reasonable accommodation "does not include removing an 'essential function []" from the position, for that is *per se* unreasonable") (internal citation omitted). Therefore, the Court finds that Plaintiff failed to show that she proposed an objectively reasonable accommodation.

Despite Plaintiff's failure to propose a reasonable accommodation, the Health District took it upon itself to do so. "The ADA also "mandates an individualized inquiry in determining whether an [employee's] disability . . . disqualifies him from a particular position." *Rorrer*, 743 F.3d at 1040 (citing *Keith v. Cty. of Oakland*, 703 F.3d 918, 923 (6th Cir. 2013)) (alteration and ellipsis in original). Both parties must collaborate in the interactive process and " '[w]hen a party obstructs the process or otherwise fails to participate in good faith, courts should attempt to isolate the cause of the breakdown and then assign responsibility.'" *Lafata v. Church of Christ Home for Aged*, 325 F. App'x 416, 422 (6th Cir. 2009) (citing *Kleiber*, 485 F.3d at 871).

It is undisputed that once the Health District was made aware that Plaintiff could no longer perform mobile unit inspections, the Health District presented Plaintiff with the accommodation of "only performing restaurant inspections, [something] the Health District believed she could do exceptionally well." ECF No. 16 at PageID#: 110. Although the Health District's proposed accommodation was reasonable—because it considered Plaintiff's physical limitations and fundamental duties of her job as a sanitarian, Plaintiff rejected the offer. ECF

14

(4:16CV2582)

No. 17 at PageID# 284—85. Plaintiff admits that she refused the Health District's offer because she "did not think she could physically handle any more restaurant inspections at that time . . . ." *Id.* An employee who does not propose a reasonable accommodation and also rejects a proposed accommodation may not maintain a claim for failure to accommodate. *See, e.g.*, *Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 557 (6th Cir. 2008).

Thereafter, the evidence establishes the Health District was unable to further propose other accommodations for Plaintiff because on August 27, 2012, Plaintiff presented the Health District with a physician's statement that she was disabled from her work and indicated she needed to resign. ECF No. 16 at PageID#: 101. Plaintiff then resigned on August 28, 2012. *Id.* "If [interactive] process fails to lead to reasonable accommodation of the disabled employee's limitations, responsibility will lie with the party that caused the breakdown." *Rorrer*, 743 F.3d at 1040 (citing *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 805 (7th Cir. 2005)). Because Plaintiff voluntarily withdrew from the interactive process at a time when the Health District was still reasonably engaged, Plaintiff, and not the Health District bears responsibility for the breakdown of the interactive process. *See Arndt*, 2017 WL 6375584, at * 7—*8. The Court concludes that no reasonable juror could find that the Health District, rather than Plaintiff, was responsible for the breakdown in the interactive process or that the Health District failed to engage in the interactive process in good faith.

Accordingly, Plaintiff's failure to accommodate claim also fails.

(4:16CV2582)

#### 4. OPERS Disability

Lastly, the Health District argues that Plaintiff is precluded from pleading an ADA claim because the medical evidence reveals that Plaintiff could not work at all, therefore disqualifying her from asserting an ADA claim. *See* Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795 (1999). In concluding that Plaintiff has failed to plead a *prima facie* case for disability discrimination claims, the Court need not analyze whether an award of disability also precludes Plaintiff from pleading such claims.

Because Plaintiff has failed to show evidence of a *prima facie* case of discrimination under the ADA and Ohio Revised Code § 4112.02, she cannot show that she was otherwise qualified for the position, with or without reasonable accommodation. Accordingly, Plaintiff's disability discrimination claims under the ADA and Ohio Revised Code § 4112.02 fail.

### B. Ohio Public Policy Claim

Count Three of Plaintiff's complaint alleges that the Health District terminated her employment in violation of Ohio's public policy because of her disabilities. ECF No. 1 at PageID#: 9. Ohio law recognizes a common law claim for wrongful discharge in violation of the state's public policy. *Painter v. Graley*, 70 Ohio St.3d 377, 382, 639 N.E.2d 51 (Ohio 1994). The elements of such a claim arise entirely under Ohio law, in particular the need to ascertain the state's "clear public policy." *See id.*

28 U.S.C. § 1367(c) states that the district court may decline to exercise supplemental jurisdiction over a state law claim if: "(1) the claim raises a novel or complex issue of State law," or "(3) the district court has dismissed all claims over which it has original jurisdiction." Both of

16

(4:16CV2582)

these justifications for declination apply here. A violation of state public policy is an evolving and complex issue of Ohio law, and the Court has dismissed Plaintiff's federal disability claim. Therefore, the Court exercises its discretion to decline jurisdiction over Count Three of Plaintiff's complaint.

### IV. Conclusion

Defendant's Motion for Summary Judgment (ECF No. 16) is granted. The case is closed.

IT IS SO ORDERED.

 February 22, 2018            */s/ Benita Y. Pearson*
Date                                           Benita Y. Pearson
                                                    United States District Judge